IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LIZARD SKINS, LLC,<br><br>　　　Plaintiff,<br><br>v.<br><br>LZRD TECH, INC.,<br><br>　　　Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS OR TRANSFER VENUE**<br><br>Case No. 2:23-cv-00801-JNP-DAO<br><br>District Judge Jill N. Parrish |

Before the court is Defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure or, in the alternative, transfer venue to the Northern District of Georgia under 28 U.S.C. § 1404(a). In the court's view, Plaintiff has made a prima facie showing that Defendant is subject to personal jurisdiction in Utah. Further, Defendant has not shown that the interests of efficiency and justice would be served by a transfer. Therefore, the court DENIES Defendant's motion.

## BACKGROUND

In recounting the background of the case at this stage, the court takes the plaintiff's well-pleaded facts as true and may, in its discretion, consider any affidavits that the parties have adduced, resolving all factual disputes in the plaintiff's favor. *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1307 (10th Cir. 2024); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).

Plaintiff Lizard Skins, LLC, manufactures sporting-goods accessories, including grips, gloves, and protective apparel. Over the past 15 years, Plaintiff has crafted products for numerous

sports, including cycling, lacrosse, hockey, and baseball, becoming the official grip-bat supplier of Major League Baseball in 2016. And for at least six years now, Plaintiff has sold compression arm sleeves under its Lizard Skins trademark throughout the country. Plaintiff is incorporated in Delaware and has its principal place of business in American Fork, Utah. *See* ECF 1 ("Complaint"), at 1–3.

Defendant LZRD Tech (pronounced Lizard Tech) also manufactures sporting-goods accessories, including compression arm sleeves like Plaintiff's, although its products are targeted toward football players. Using its LZRD logo, Defendant supplies products across the country to about 83 teams ranging from high-school to NFL level (none of the teams are located in Utah). Defendant's products reach customers either through third parties like Amazon and Dick's Sporting goods, which purchase stock through wholesalers, or through online orders placed directly through Defendant's website. To date, Defendant has fulfilled at least 126 online orders placed by customers in Utah. Other than these orders, Defendant has no direct connection to Utah: it is incorporated in either Georgia or Delaware and has its principal place of business in Atlanta, Georgia. *See* ECF 20-1 ("Pullen Decl."), at 2–6.

In November 2023, Plaintiff sued Defendant for trademark violations under the Lanham Act, 15 U.S.C. § 1051 *et seq*., common-law trademark infringement, common-law unfair competition, and violations of the Utah Truth in Advertising Act, UTAH CODE ANN. § 13-11a-1 *et seq*. According to Plaintiff, Defendant's logo is creating confusion in the marketplace by leading consumers to believe that LZRD sleeves are manufactured by Plaintiff. Plaintiff also claims that it is suffering in its sales and reputation because of Defendant's using the LZRD logo. Complaint at 7–8. Defendant counters that it is not subject to personal jurisdiction in Utah or, in the alternative, that this case should be transferred to the Northern District of Georgia. ECF 20 ("Motion"), at 1.

# DISCUSSION

"The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of [the question of] venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). The court therefore begins with Defendant's argument that it is not subject to personal jurisdiction in Utah.

## I.      Personal Jurisdiction

To determine whether the court has personal jurisdiction over Defendant, the court first "ask[s] whether any applicable statute authorizes the service of process on [D]efendant[]." *Dudnikov*, 514 F.3d at 1070. Then, the court "examines whether the exercise of such statutory jurisdiction comports with constitutional due process demands." *Id.* Neither the Lanham Act nor the Utah Truth in Advertising Act provides for nationwide service of process. *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (Lanham Act); *see* UTAH CODE ANN. § 13-11(a)-1 *et seq.* (Utah Truth in Advertising Act). So, Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure "commands the district court . . . to apply the law of the state in which the district court sits." *Dudnikov*, 514 F.3d at 1070. Utah's long-arm statute, in turn, extends jurisdiction "to the fullest extent permitted by the [D]ue [P]rocess [C]lause of the Fourteenth Amendment." UTAH CODE ANN. § 78B-3-201. As such, the statutory inquiry "effectively collapses into the . . . constitutional[] analysis." *Dudnikov*, 514 F.3d at 1070.

The Fourteenth Amendment's Due Process Clause limits a court's ability to exercise jurisdiction over a defendant. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Whether a court may exercise personal jurisdiction over a defendant depends on the defendant's relationship with the forum state. *See Bristol-Meyers Squibb Co. v. Superior Ct. of*

3

*Calif.*, 582 U.S. 255, 261–262 (2017). Depending on the defendant's relationship to the forum state, the court may have either general jurisdiction or specific jurisdiction over the defendant (or none at all). When the defendant is "at home" in a state—such as when a corporation is incorporated in that state or has its principal place of business in that state—the courts of that state may exercise general jurisdiction over the defendant, meaning that they "may hear *any* claim against that defendant." *Id.* at 262. When a defendant is not "at home" in a state but has had "minimum contacts" with the state, the courts of that state may exercise specific jurisdiction for claims arising out of those contacts. *Id.* Finally, when the defendant has not had sufficient contacts with that state—that is, when the defendant has not "purposefully avail[ed] itself of the privilege of conducting activities within th[at s]tate"—the courts of that state may not hear any claims against that defendant. *Ford Motor*, 592 U.S. at 359 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Plaintiff "does not contend that [Defendant's] contacts [with Utah] satisfy the general jurisdiction standard, so only specific jurisdiction is at issue" here. *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). The "constitutional touchstone" for specific jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts, in turn, means that "(1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum [s]tate, and (2) the plaintiff's injuries 'arise out of or relate to those activities.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) (quoting *Burger King*, 471 U.S. at 472). Once the plaintiff shows that the defendant has established minimum contacts, the defendant may "present a compelling

case that the presence of some other considerations would render jurisdiction unreasonable." *Old Republic*, 877 F.3d at 909 (quoting *Dudnikov*, 514 F.3d at 1080).

A.  Minimum Contacts

Plaintiff argues that Defendant purposefully directed its activities at Utah when it fulfilled about 126 online orders to Utahns in addition to selling an undisclosed number of products in Utah through third parties. ECF 23 ("Response"), at 6. Selling products that happen to end up in the forum state through third parties cannot alone support specific jurisdiction. *Asahi Metal Indus. Co. v. Superior Ct. of Calif.*, 480 U.S. 102, 112 (1987) (plurality op.) ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum [s]tate."); *Monge v. RG Petro-Mach. (Grp.) Co. Ltd.*, 701 F.3d 598, 613 (10th Cir. 2012) ("Although 'it is foreseeable that' a product might travel to a forum state, such foreseeability is not 'a sufficient benchmark for personal jurisdiction . . . .'" (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 295 (1980)). So, the court focuses on the 126 online orders.

The Tenth Circuit has identified three frameworks for evaluating the purposeful-direction prong: "(1) continuing relationships with forum state residents ('continuing relationships'); (2) deliberate exploitation of the forum state market ('market exploitation'); and (3) harmful effects in the forum state ('harmful effects')." *Old Republic*, 877 F.3d at 905. Although Plaintiff invokes the "continuing relationships" framework, which is often applied to ongoing contractual relationships, its argument sounds more in the "harmful effects" framework, which has been applied to trademark-infringement claims in the internet context. *See id.* at 907–08. The court considers Plaintiff's allegations under both frameworks.

For purposeful direction through continuing relationships, the plaintiff must show that the defendant "reached out beyond [its s]tate and into another by, for example, entering [into] a

5

contractual relationship that envisioned continuing and wide-reaching contacts in the forum [s]tate." *Id.* at 905 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). The court should "evaluate the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Id.* (quoting *Burger King*, 471 U.S. at 479). The defendant's "solicitations of or direct communications with forum state residents" suggest purposeful direction. *Id.*

Here, Plaintiff does not allege that Defendant communicated with its Utah customers before they purchased Defendant's products online, that Defendant and its Utah customers might communicate in the future, or that Defendant and its Utah customers are engaged in a course of dealing. All that Plaintiff alleges is that Defendant fulfilled 126 online orders to Utah residents, and one of Defendant's affidavits adds that Defendant does not advertise to or solicit business from Utahns. Pullen Decl. at 5. These facts cannot support the conclusion that Defendant purposefully directed its activities at Utah under the "continuing relationships" framework.

For purposeful direction through harmful effects, the plaintiff must show that the defendant engaged in "intentional conduct" that "target[ed] and ha[d] substantial harmful effects in the forum state." *Old Republic*, 877 F.3d at 907 (emphasis removed). The Tenth Circuit has identified three elements for this framework: (1) an intentional action that was (2) expressly aimed at the forum state with (3) knowledge that the brunt of the injury would be felt in the forum state. *Id.* (quoting *Dudnikov*, 514 F.3d at 1072). In the internet context, the defendant must have "*intentionally direct[ed]* … its activity or operation *at* the forum state rather than just having [had] the activity or operation accessible there." *Id.* at 908 (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011)). Put differently, the defendant must have done something to target the forum state

beyond simply "maintain[ing] . . . a web site . . . access[ible] by residents of the forum state." *Shrader*, 633 F.3d at 1241.

Here, Plaintiff's allegations of 126 online orders of allegedly infringing products fulfilled to Utahns fit neatly within the harmful-effects framework. Defendant intentionally created its products, offered them for sale online, and shipped them directly to its Utah customers. Each time Defendant sold an allegedly infringing product to a customer in Utah, Plaintiff was harmed—nationwide (since Plaintiff's trademark provides nationwide protection) but especially in Utah. Thus, Defendant did much more than operate a website accessible by Utahns. One can reasonably infer that when Defendant "directly process[ed] orders from and ship[ped] orders to Utah," it "was aware of its continued availment of the privilege of conducting business in Utah" such that it could not escape the "concomitant legal responsibilities that such an expanded market [would] bring with it." *DP Creations, LLC v. Adolly.com*, No. 2:22-cv-00230, 2022 WL 18087198, at *3 (D. Utah Nov. 2, 2022).

At oral argument, counsel for Defendant argued that under *Old Republic*, 877 F.3d 895, a few sales to the forum state without more cannot suffice for purposeful direction. Counsel's reliance on that case is misplaced because the plaintiff in that case, unlike in this case, did not allege that the defendant's direct sale of a product or service to the forum state itself violated the plaintiff's rights; thus, that case did not fit into the harmful-effects framework that controls this case. The defendant in *Old Republic* manufactured airplane engines and gave repair businesses unlimited access to its online engine-servicing manuals for an annual fee. *Id.* at 900–02. A Colorado repair business (one of 20 such customers in Colorado) accessed the defendant's online manuals in servicing an engine for an airplane that later crashed in Idaho. *Id.* at 901. The airplane's insurer paid the airplane owner for the loss and then filed a subrogation action against the out-of-

7

state defendant in Colorado. *Id.* at 901–02. The Tenth Circuit held that the defendant had not purposefully directed its activities toward Colorado with its 20 forum-state customers under the market-exploitation framework.

The context of *Old Republic* is different because the defendant there did not sell an allegedly infringing product or service to forum-state customers. When a defendant sells even a single infringing product to a forum-state customer directly, the customer is instantly harmed, most directly in the forum state. This in-state harm is foreseeable to the defendant producing, selling, and shipping the infringing products. Thus, regardless of any additional factors, the direct sale of a single allegedly infringing product to a forum-state customer supports the conclusion that the defendant purposefully directed its conduct toward the forum state.

But set aside for a moment the frameworks and elements described above; reasoning from first principles leads to the same conclusion in this case. The formal purposeful-direction test and three frameworks functionally substantiate the principle that "notwithstanding [a defendant's] lack of physical presence in the state, the state's exercise of sovereignty over it [must] be . . . fair and just." *Dudnikov*, 514 F.3d at 1070. The formal test and frameworks serve the principle, not the other way around. Thus, it helps to put the question more directly: has Defendant "had the privilege of doing business" in Utah such that it would be consistent with "traditional notions of substantial justice and fair play" for it to answer a complaint here? *The Neck Hammock, Inc v. Danezen.com*, No. 2:20-cv-287, 2020 WL 6364598, at *6 (D. Utah Oct. 29, 2020).

Yes indeed. Defendant has "transacted business" in Utah, and Utah "has a legitimate interest in protecting its citizens when more than 100 allegedly counterfeit products have been sold in the state." *Id.* This case therefore fits neatly within a long line of cases from this district holding that the defendant in each case purposefully directed its conduct at Utah when it sold allegedly

infringing products online to Utahns.[1] *See Bodied By Bella Boutique, LLC v. Bodyed By Bella LLC*, No. 2:21-cv-00693, 2023 WL 4052732, at *4 (D. Utah June 16, 2023) (collecting cases). In the cases concluding that specific jurisdiction was not proper, the defendant had merely maintained a website accessible from Utah; the plaintiff had not alleged that the defendant had actually sold (or offered to sell) products directly to Utahns. *See id.* at *5; *Kindig It Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167, 1176 (D. Utah 2016).

The other component of the minimum-contacts inquiry—whether the plaintiff's claims arise out of or relate to the defendant's conduct in the forum state—is considerably more straightforward. A trademark-infringement claim arises when anyone other than the registrant "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . [or] distribution . . . of any goods or services . . . [in a way that] is likely to cause confusion . . . or mistake." 15 U.S.C. § 1114. Here, Plaintiff claims that Defendant used a logo confusingly similar to Plaintiff's on its products sold to Utahns. Plaintiff's claims thus stem directly from Defendant's conduct here. *See, e.g.*, *The Neck Hammock*, 2020 WL 364598, at *6.

---

[1] At oral argument, counsel for Defendant suggested that each of these cases had at least one plus factor beyond simply the online sale of an allegedly infringing product into the forum state. Even if so, the court finds that the reasoning of those cases does not depend on the plus factors. What matters is whether the defendant intentionally directed the sale of at least one allegedly infringing product to the forum state. *See, e.g.*, *Bodied By Bella Boutique, LLC v. Bodyed By Bella LLC*, No. 2:21-cv-00693, 2023 WL 4052732, at *5 (D. Utah June 16, 2023) (suggesting that it would be sufficient for purposeful direction if "Defendant ha[d] a website on which it s[old] products direct to customers and it in fact sold one purportedly infringing product" into the forum state). This principle provides a sensible, administrable rule for purposeful direction in cases involving online sales of products to forum-state customers.

      B.      Traditional Notions of Fair Play and Substantial Justice

Notwithstanding its direct sales to Utah, Defendant argues that the exercise of personal jurisdiction here would be unreasonable. In its view, litigating in Utah would impose a great burden on it because most of its business activities are in Georgia. Further, Defendant claims that Utah has no interest in resolving the dispute and would not support the most efficient resolution of the controversy because Defendant's witnesses are almost all in Georgia. Motion, at 15–17.

The court disagrees on all points. First, "[t]he burden of litigating in Utah is not any greater than the burden Defendant voluntarily entered into to sell products to Utah." *Parah, LLC v. G'Strat LLC*, No. 2:13cv756, 2014 WL 545871 (D. Utah Feb. 10, 2014). As courts have recognized for decades now, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern" given modern communication and transportation technology. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) (quoting *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997)). Second, Utah "has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Alfwear, Inc. v. IBKUL UBHOT Ltd.*, No. 2:21-cv-00698, 2022 WL 3705483, at *8 (D. Utah Aug. 26, 2022) (quoting *Burger King*, 471 U.S. at 473). And it is not obvious that Utah would be such an inefficient forum—nearly all if not all of Plaintiff's witnesses are located here. ECF 23-1 ("Barker Decl.").

For these reasons, the court concludes that Defendant has the minimum contacts necessary to support personal jurisdiction and that the exercise of personal jurisdiction is reasonable.

**II.**    **Venue**

Defendant argues in the alternative that the court should transfer the case to the Northern District of Georgia. Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to

any other district or division where it might have been brought" for the "convenience of parties and witnesses[] in the interest of justice." Plaintiff could have originally brought this case in the Northern District of Georgia because that is the district where Defendant has its principal place of business. *See id.* § 1391(b)(1). So the court "need only evaluate whether the requested transfer will materially enhance the convenience of the parties and witnesses[] and is in the interest of justice." *F.H.G. Corp. v. Green Wave, Inc.*, No. 1:16-cv-00147, 2017 WL 2728412, at *3 (D. Utah June 23, 2017) (internal quotation marks omitted). The party moving to transfer the case "bears the burden of establishing that the existing forum is inconvenient." *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (internal quotation marks omitted). The court assesses inconvenience by weighing several factors, including the plaintiff's choice of forum, accessibility of witnesses and other sources of proof, cost of making the necessary proof, relative docket congestion, and advantage of having a local court determine questions of local law. *Id.*

Ordinarily, "the plaintiff's choice of forum should [not] be disturbed," especially when the plaintiff resides in the district where he has brought the suit. *Id.* at 1167–68 (internal quotation marks omitted). Since Plaintiff has its principal place of business in Utah, Defendant faces a particularly steep challenge to show that the other factors outweigh the deference owed to Plaintiff's choice to sue in Utah.

The court finds that Defendant has not met its burden of proof. Before addressing the remaining factors individually, it is worth noting that Defendant's arguments about why the factors above favor transfer all rest on Defendant's mistaken view that the facts giving rise to this case have no significant connection to Utah. *Au contraire*, this lawsuit by a company based *in Utah* stems from Defendant's repeated sales *in Utah* of its product *to Utah customers*. Thus, "Utah has a much stronger connection to the operative facts of the lawsuit because the allegedly infringing

activity is occurring in Utah." *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1206 (D. Utah 2014). Defendant accordingly bears a heavy burden to convince the court not to defer to Plaintiff's sensible choice of Utah as the forum for this litigation.

Defendant claims that resolving this case in Utah will be particularly inconvenient and burdensome for the witnesses, raising the costs involved in trying this case. Motion, at 20–23. "The convenience of witnesses" is perhaps "the most important factor in deciding a motion [to transfer]." *Emps. Mut. Cas. Co.*, 618 F.3d at 1169 (internal quotation marks omitted). To show that the forum would be inconvenient for the witnesses, the movant "must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Id.* (cleaned up).

Defendant represents that if this case goes to trial, it will call as witnesses its employees who helped create its product, oversaw the development of the product, and ran its business operations. All these individuals are located in Georgia except for one employee who lives in North Carolina and Defendant's CEO, who is currently attending medical school in Illinois. Motion, at 21–22. The court recognizes that the testimony of these witnesses will be crucial to Defendant's case, but Defendant has not explained why these witnesses would be unable or unwilling to travel to Utah for trial. In any event, the court is "less concerned about the burden that appearing at trial might impose on witnesses who are employees of parties because it is presumed such witnesses will appear voluntarily." *Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1054 (N.D. Ill. 2012) (cleaned up). And Defendant entirely ignores Plaintiff's witnesses—all of whom are located in Utah. *See* Barker Decl. Any inconvenience to Defendant's witnesses of testifying in Utah is outweighed by the inconvenience to Plaintiff's witnesses of testifying in Georgia. In sum,

12

Defendant "has failed to demonstrate that the relative accessibility of . . . witnesses in [Utah]," and correspondingly the cost of litigating in Utah, "is so substantial as to justify a transfer." *Green Wave*, 2017 WL 2728412, at *7.

Defendant next argues that transferring the case to the Northern District of Georgia is sensible because that district has a less congested docket. In assessing the administrative challenges of court congestion, "the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Emps. Mut. Cas. Co.*, 618 F.3d at 1169. Defendant observes that the Northern District of Georgia has mostly had a lower median time from filing to disposition (for civil cases) and a lower median time from filing to trial (for civil cases) in the past couple years.[2] *See* U.S. District Courts—National Judicial Caseload Profile, *Caseload Statistics Data Tables*, U.S. COURTS (June 30, 2024), https://www.uscourts.gov/file/78871/download. However, Defendant has not addressed the other two statistics noted above. Defendant's "failure to properly address all of the relevant statistics" alone "means that it has not carried its burden to demonstrate that this factor weighs in its favor." *Green Wave*, 2017 WL 2728412, at *8. But in any event, as Plaintiff observes, the other numbers—pending cases per judge and average weighted filings per judge—essentially

---

[2] The median times from filing to disposition (civil cases) in the Northern District of Georgia for the past six reporting periods in reverse chronological order, including the 12-month period ending June 30, 2024, were 5.4, 14.0, 5.0, 6.5, 5.5, and 6.5 months. The median times from filing to trial (civil cases) were 32.9, 33.1, 39.1, 30.8, 31.3, and 29.4 months.

In the District of Utah, the median times from filing to disposition (civil cases) were 9.3, 11.3, 12.2, 12.6, 9.8, and 10.0 months. The median times from filing to trial (civil cases) for the past three reporting periods were 31.1, 54.4, and 70.0 months. (The source does not provide data for the three reporting periods before that.)

13

counterbalance the statistics on which Defendant relies.[3] *See* U.S. District Courts—National Judicial Caseload Profile, *supra*.

Defendant then argues that because only one of Plaintiff's claims arises under Utah law and the others arise under federal law, transferring the case is the proper course. This argument gets the law precisely backwards. Courts typically favor adjudication of local questions "by a court sitting in that locale." *Emps. Mut. Cas. Co.*, 618 F.3d at 1170. Keeping this case in Utah will allow a court sitting in Utah to decide Plaintiff's claim under the Utah Truth in Advertising Act. Transferring the case to the Northern District of Georgia, however, would require a non-local court to decide a question of local law.

Finally, Defendant argues that practical considerations weigh in favor of transfer. In its view, this case has little to no connection with the District of Utah, and transferring venue would provide the greatest relief to Defendant and its witnesses. But saying that this case has nothing to do with Utah does not make it so. As explained above, the allegedly infringing activity is occurring in Utah, so Utah has at least a strong connection to this case, perhaps stronger than any other State's. And transferring venue to relieve the burden on Defendant would "[m]erely shift[] the inconvenience from one side to the other." *Id.* at 1167.

In sum, none of the factors Defendant cites weigh in favor of transfer. But at least one factor (the plaintiff's choice of forum) weighs heavily against transfer, and another factor (local

---

[3] The numbers of pending cases per judge in the Northern District of Georgia for the past six reporting periods in reverse chronological order, including the 12-month period ending June 30, 2024, were 519, 541, 831, 846, 769, 660. The numbers of average weighted filings per judge were 645, 573, 570, 554, 612, and 614.

In the District of Utah, the numbers of pending cases per judge were 511, 498, 526, 556, 510, and 466. The numbers of average weighted filings per judge were 483, 431, 433, 513, 427, and 457.

adjudication of local questions) weighs slightly against transfer. Thus, Defendant has not carried its burden of showing that the District of Utah is an inconvenient forum for resolving the case.

## CONCLUSION AND ORDER

For the reasons above, the court DENIES Defendant's motion to dismiss for lack of personal jurisdiction and DENIES Defendant's motion to transfer venue to the Northern District of Georgia.

DATED September 18, 2024.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge